SO ORDERED: September 30, 2024.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JONATHAN B. HOUSE, | ) Case No. 23-00063-JMC-7A |
| | ) |
| Debtor. | ) |
| | ) |
| NANCY J. GARGULA, | ) |
| UNITED STATES TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 23-50045 |
| | ) |
| JONATHAN B. HOUSE, | ) |
| | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding came before the Court for a bench trial on May 30, 2024 (the "Trial"). Plaintiff Nancy J. Gargula, United States Trustee ("UST"), appeared by counsel Matthew Miller. Defendant Jonathan B. House ("Debtor") appeared *pro se*. At the conclusion

of the Trial, the Court announced that UST has sustained her burden to prove the required elements to support denial of Debtor's discharge.

The Court, having reviewed and considered the evidence admitted at the Trial and the other matters of record, having weighed the credibility of the witnesses, having heard the representations of Debtor and counsel for UST, and being otherwise duly advised, now ENTERS the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

## Findings of Fact

The Court makes the following findings of fact:

1. On or about November 26, 2021, Belle Tire Distributers, Inc. ("Belle") serviced Debtor's vehicle. (UST's Ex. 6, ¶ 1.) On November 26, 2021, Debtor was injured and his vehicle was damaged in a vehicle crash, allegedly due to Belle's negligence which caused the brakes to malfunction. (UST's Ex. 1; UST's Ex. 6, ¶¶ 2-10.)

2. Before December 2021, Jeanette M. Etnier ("Etnier") and Zachary Brugger ("Brugger", and collectively with Etnier, "Homeowners") each hired Debtor to perform work on their respective homes. (Homeowners' Test.) Homeowners each made a deposit payment to Debtor. *Id.* Debtor failed to complete the work on their homes and subsequently agreed to issue refunds of the deposit payments to Homeowners. *Id.* Debtor delivered checks to Homeowners, but the checks were dishonored due to insufficient funds (in the case of Etnier) or an invalid account (in the case of Brugger). *Id.*

3. On May 5, 2022, Debtor was charged with criminal felony fraud against Homeowners in Johnson Circuit Court under Cause No. 41C01-2205-F6-000320 (the "Fraud Case"). (UST's Ex. 17, ¶¶ 29-30.) On May 18, 2022, the Johnson Circuit Court issued an arrest

warrant against Debtor for felony fraud. (UST's Ex. 22.) Debtor was detained and subsequently released on bond. (UST's Ex. 17, ¶ 34.)

4. At some point between November 26, 2021 and the Petition Date, Debtor, with assistance of counsel, explored a possible cause of action against Belle (the "Belle Claim"). (Debtor's Test.) That counsel determined that Debtor did not have a winnable case against Belle. *Id.*

5. At some point after his former counsel abandoned representation of Debtor with respect to the Belle Claim,[1] Debtor received advertising materials from Ken Nunn Law Office and reached out to them to discuss a potential recovery against Belle. *Id.* Debtor testified at the Trial that he had no intention of re-pursuing a potential cause of action against Belle until he received the advertising materials from Ken Nunn Law Office and that he would not believe that he had a case against Belle until Ken Nunn Law Office told him he did because of his former counsel's determination that Debtor did not have a winnable case against Belle. *Id.*

6. On January 9, 2023 (the "Petition Date"), Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"),[2] in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (Bankruptcy Case Docket No. 1) (the "Bankruptcy Case").

7. On the Petition Date, Debtor filed *Schedule A/B: Property* (Bankruptcy Case Docket No. 1) ("Schedule A/B"). Question 33 of Schedule A/B asks whether Debtor owns or has any legal or equitable interest in "[c]laims against third parties, whether or not [Debtor] ha[s] filed a lawsuit or made a demand for payment". Debtor answered "No". Question 34 of

---

[1] Debtor testified that he did not recall the point in time when his former counsel abandoned the Belle Claim or when he believed that he did not have a cause of action with respect thereto.

[2] All statutory references hereinafter are to the Bankruptcy Code unless otherwise noted.

Schedule A/B asks whether Debtor owns or has any legal or equitable interest in "[o]ther contingent and unliquidated claims of every nature, including counterclaims of [D]ebtor and rights to set off claims".  Debtor answered "No".

8. On the Petition Date, Debtor filed *Schedule E/F: Creditors Who Have Unsecured Claims* (Bankruptcy Case Docket No. 1) ("Schedule E/F", and collectively with Schedule A/B, the "Schedules").  Debtor did not list Homeowners on Schedule E/F.

9. On the Petition Date, Debtor filed the *Declaration About an Individual Debtor's Schedules* (Bankruptcy Case Docket No. 1) where he declared, under penalty of perjury, that "the summary and schedules … are true and correct."

10. The meeting of creditors under § 341 (the "341 Meeting") was initially set for February 3, 2023 but was continued to February 17, 2023 due to Debtor's absence.  (Bankruptcy Case Docket Nos. 10 and 19.)

11. On February 14, 2023, three days before the 341 Meeting, Ken Nunn Law Office faxed a letter (the "Letter") to Liberty Mutual, an insurance carrier for Belle, informing that Ken Nunn Law Office is representing Debtor in pursuit of the Belle Claim.[3]  (UST's Ex. 1.)

12. On February 17, 2023, the 341 Meeting was conducted by NiCale L. Rector, chapter 7 trustee ("Trustee"), at which Debtor appeared.  (UST's Ex. 2, p. 1.)  At the 341 Meeting, Debtor attested that, to the best of his knowledge, "the information contained in the petition, schedules, statements and related documents [is] true and correct" and that there are no errors or omissions in such documents.  (*Id.* at p. 4:21-5:2.)  When specifically asked whether he "listed all of [his] creditors on the schedules", Debtor answered "Yes".  (*Id.* at p. 5:5-6.)  When

---

[3] The exact date when Debtor retained Ken Nunn Law Office as his counsel with respect to the Belle Claim was not provided to the Court.  Therefore, the Court notes that Debtor retained Ken Nunn Law Office at the latest on February 14, 2023, when Ken Nunn Law Office faxed the Letter to Liberty Mutual.

asked whether "anyone owe[s] [him] money, or is … holding any of [his] property", Debtor answered "No". (*Id.* at p. 6:19-21.) Further, when asked whether he is "suing anyone now or … plan[s] on suing anyone in the future [or] ha[s] type of claim that [he] can file for money", Debtor answered "No". (*Id.* at p. 6:22-7:2.) At no time during the 341 Meeting did Debtor provide information about the Belle Claim or Homeowners.

13. On February 19, 2023, Trustee, being unaware of the Belle Claim and Ken Nunn Law Office's representation of Debtor, filed *Chapter 7 Trustee's Report of No Distribution* (Bankruptcy Case Docket No. 21), which serves, pursuant to S.D. Ind. B-6007-1(a), as the "notice of proposed abandonment under Fed. R. Bankr. P. 6007 of all property of the estate listed on the Debtor's schedules".

14. On March 6, 2023, Debtor, by counsel Ken Nunn Law Office, filed the *Complaint for Damages* against Belle in the Johnson Superior Court under Cause No. 41D01-2303-CT-000051 (the "Belle Case") seeking damages with respect to the Belle Claim. (UST's Ex. 6.)

15. On March 16, 2023, UST filed *United States Trustee's Motion for Order Directing Debtor to Appear for Examination Pursuant to Fed. R. Bankr. P. 2004 and to Produce Documents* (Bankruptcy Case Docket No. 29). Later that same day, the Court entered the *Order Directing Debtor to Produce Documents and Appear for Examination Pursuant to Fed. R. Bankr. P. 2004* (Bankruptcy Case Docket No. 32) (the "2004 Order") requiring Debtor to appear for examination on April 27, 2023 and to produce to UST by April 20, 2023 certain documents (the "Documents") including but not limited to copies of documents relating to the Belle Case and any and all criminal matters in which Debtor is a defendant on or after May 30, 2022. While a review of the Bankruptcy Case docket does not show a certificate of service with regard to the 2004 Order, UST alleges in the Complaint that the 2004 Order was served to Debtor by first

class US Mail on March 16, 2023 (UST's Ex. 17, ¶ 36) and was emailed to Debtor on April 26, 2023 (UST's Ex. 16).  Despite Debtor's assertions that he emailed the Documents to UST, UST did not receive any of the Documents.  (UST's Ex. 16; UST's Ex. 17, ¶ 42.)

16. On March 26, 2023, Trustee filed *Trustee's Report of Possible Assets and Notice of Proposed Abandonment* (Bankruptcy Case Docket No. 36), proposing to abandon all scheduled assets except the Belle Case and Debtor's Venmo account.

17. On June 5, 2023, UST timely filed the *Complaint to Deny Discharge* (Docket No. 1) (the "Complaint") commencing this adversary proceeding and seeking denial of Debtor's discharge pursuant to § 727(a)(2)(A),[4] (a)(4)(A) and (a)(6)(A).

18. On September 7, 2023, Debtor filed the *Response to Complaint to Deny Discharge* (Docket No. 14), denying the material allegations of the Complaint.

19. On January 4, 2024, the State of Indiana and Debtor filed in the Fraud Case the *Agreement to Withhold Prosecution* whereby Debtor agreed to pay restitution in the amount of $3,250 for the benefit of Etnier and pay restitution in an amount to be determined for the benefit of Brugger.  (UST's Ex. 4.)

20. On April 15, 2024, the *Order on Restitution* was entered in the Fraud Case, requiring Debtor to pay restitution in the amount of $10,932.95 to Brugger.  (UST's Ex. 10.)

21. Based on the Court's review of the Bankruptcy Case docket, Debtor did not file any amendment to the Schedules to list the Belle Claim, the Belle Case and Homeowners.

---

[4] While the Complaint relies on § 727(a)(2)(A), UST's evidence presented at the Trial rests upon Debtor's post-petition conduct which is governed by § 727(a)(2)(B).  The issue was tried without any objection by Debtor. Fed. R. Civ. P. 15(b)(2), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015, provides that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  Accordingly, the Court will deem the Complaint to have been amended to conform to the proof at the Trial and analyze the Complaint under § 727(a)(2)(B) rather than § 727(a)(2)(A).  *See Malicki v. Bernstein (In re Bernstein)*, 447 B.R. 684, 701 (Bankr. D. Conn. 2011).

**Conclusions of Law**

The Court makes the following conclusions of law:

A.     Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact, to support the judgment of the Court.

B.     This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157.

C.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

D.     Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

E.     UST seeks a denial of Debtor's discharge in the underlying Bankruptcy Case pursuant to § 727(a)(2)(B), (a)(4)(A) and (a)(6)(A).

F.     Section 727(a) provides, in relevant part:

> The court shall grant the debtor a discharge, unless –
> …
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> …
>     (B) property of the estate, after the date of the filing of the petition
> …
> …
> (4) the debtor knowingly and fraudulently, in or in connection with the case –
>     (A) made a false oath or account …
> …
> (6) the debtor has refused, in the case –
>     (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify … .

G.     "Consistent with the 'fresh start' policy underlying the Code, these [§ 727(a)] exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor. It is also important, however, to recognize that a discharge in bankruptcy is a

privilege, not a right, and should only inure to the benefit of the honest debtor." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996) (internal citations omitted). "The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor." *Soft Sheen Prods., Inc. v. Johnson (In re Johnson),* 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) (citation omitted).

   H.  The grounds for denial of discharge under § 727(a) must be established by a preponderance of the evidence. *Peterson v. Scott (In re Scott),* 172 F.3d 959, 966–67 (7th Cir. 1999).

   I.  "[I]t remains within the discretion of a bankruptcy court to grant a discharge even when grounds for denial of discharge are demonstrated to exist." *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) (quoting *In re Hacker*, 90 B.R. 994, 997 (W.D. Mo. 1987)).

*Count 1 - § 727(a)(2)(B)*

   J.  "The purpose of this provision is to deny a discharge to debtors who fail to disclose transactions regarding their assets subsequent to the filing of the bankruptcy petition." *Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 871 (Bankr. C.D. Ill. 2005) (citing *In re Wolmer*, 57 B.R. 128 (Bankr. N.D. Ill.1986)).

   K.  To prevail under § 727(a)(2)(B), the objecting party must prove the following: (1) transfer or concealment of property; (2) such property constituted property of the estate; (3) the transfer or concealment occurred after the filing of the bankruptcy petition; and (4) the transfer or concealment was made with the intent to defraud the bankruptcy trustee. *Blomberg v. Riley (In re Riley),* 351 B.R. 662, 670 (Bankr. E.D. Wis. 2006) (citation omitted).

   L.  As to the first element, " '[c]oncealment ... includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made

known.' " *Scott*, 172 F.3d at 967 (quoting *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984)).  A "concealment or transfer under § 727(a)(2) may occur even if no creditors are harmed by it.  'Proof of harm is not a required element of a cause of action under Section 727.' " *Id.* at 968 (quotation omitted).  Here, Debtor withheld knowledge and information about the Belle Claim and/or the Belle Case from Trustee at and after the 341 Meeting, even though Debtor is required, pursuant to § 521(a)(3), to "cooperate with [Trustee] as necessary to enable [Trustee] to perform [Trustee's] duties under this title".  Debtor also withheld knowledge and information about the Belle Case from UST, even though the 2004 Order ordered Debtor to provide Documents to UST and appear for an examination related thereto.

M.   Next, UST must establish that the concealed property (the Belle Claim and the Belle Case) constituted property of the estate.  The commencement of a case under chapter 7 of the Bankruptcy Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, [that the debtor held as of the petition date] is within the reach of § 541."  *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (citation omitted), abrogated on other grounds by *Law v. Siegel*, 134 S.Ct. 1188 (2014).  The definition of "property belonging to the debtor's estate [under § 541] … has uniformly been interpreted to include causes of action … ."  *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000).  "[D]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe that the assets are worthless or unavailable to the bankruptcy estate."  *Clarke*, 332 B.R. at 871 (citing *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992)).  Debtor's interest in the Belle Claim existed as of the Petition Date, albeit contingent and speculative, and was property of the estate under § 541.  Any proceeds obtained from

liquidating the Belle Claim, including through the Belle Case, are property of the estate pursuant to § 541(a)(6).

N.    Third, the concealment of the property must have occurred after the filing of the bankruptcy petition. Debtor concealed the Belle Claim and the Belle Case from Trustee and UST after the Petition Date.

O.    Lastly, we turn to Debtor's intent with regard to the concealment. UST must show that Debtor "acted with the actual intent to defraud, hinder, or delay creditors." *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996) (citations omitted). Further, "a debtor's intent in concealing … assets need not rise to the level of intending to defraud in order to deny a discharge; proof of a simple intent to hinder or delay will suffice." *Richardson v. Swisher (In re Swisher)*, Adversary No. 17-07012, 2017 WL 5634594, at *4 (Bankr. C.D. Ill. Nov. 22, 2017) (citing *Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 568–69 (7th Cir. 1989)). "Because direct evidence of a debtor's intent usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct." *Krehl*, 86 F.3d at 743. "[C]ourts are generally reluctant to accept a debtor's own 'self-serving statement of his intent as the best evidence of that intent.' " *Clean Cut Tree Serv. Inc. v. Costello (In re Costello)*, 299 B.R. 882, 895 (Bankr. N.D. Ill. 2003) (quotation omitted).

P.    While Debtor testified at the Trial that he does not recall the point in time when (1) his former counsel abandoned the Belle Claim, and (2) he started to believe he had no cause of action, it is clear that Debtor knew that he might make a recovery against Belle when he retained Ken Nunn Law Office to pursue the Belle Claim. As evidenced by the Letter, Debtor was represented by Ken Nunn Law Office in pursuit of the Belle Claim on or before

February 14, 2023. Although it is unclear whether Debtor was represented by Ken Nunn Law Office when he failed to list the Belle Claim on Schedule A/B, Debtor was aware of his interest in the Belle Claim when he failed to disclose the Belle Claim on at least three opportunities during the 341 Meeting.[5] Debtor continued to fail to disclose the Belle Claim after the 341 Meeting. Debtor did not disclose the Belle Case when and after the Belle Case was commenced.[6] Debtor failed to cooperate with UST's requests for documentation. The evidence of Debtor's persistent concealment of the Belle Claim and the Belle Case from Trustee and UST demonstrate Debtor's intent to hinder or delay creditors of the estate.

Q.    Debtor seems to argue that he did not know and was not required to disclose the Belle Claim because he consistently believed that he had no claim against Belle both before and after he retained Ken Nunn Law Office and, therefore, he did not have the required intent. The Court finds this argument unavailing. When Debtor retained Ken Nunn Law Office to pursue the Belle Claim, Debtor knew or should have known that he held a claim against Belle that might lead to a monetary recovery and that such claim belonged to the estate. Had he truthfully believed that there was no claim, he would not have retained and authorized Ken Nunn Law Office to pursue such claim on his behalf. Moreover, Debtor testified at the Trial that he had no intention of pursuing a cause of action against Belle until he reached out to Ken Nunn Law Office in response to their advertising material to discuss the potential value of the Belle Claim. His own testimony evidences his knowledge of a potential claim against Belle when he retained Ken Nunn Law Office and when he testified falsely at the 341 Meeting thereafter.

---

[5]    *See supra* ¶ 12.

[6]    Although Debtor testified at the Trial that an "amendment" was filed by Ken Nunn Law Office to disclose the Belle Case, no such amendment was filed either in this adversary proceeding or in the Bankruptcy Case.

R.       Based upon the evidence admitted, the Court's assessment of Debtor's credibility and the Court's reluctance to accept Debtor's self-serving statement regarding intent (*Costello*, 299 B.R. at 895) when the retention of Ken Nunn Law Office contradicts such statement, the Court finds that UST has sustained her burden to prove each and every element of § 727(a)(2)(B) by a preponderance of the evidence. Accordingly, the Court denies Debtor's discharge pursuant to § 727(a)(2)(B).

<u>Count 2 - § 727(a)(4)(A)</u>

S.       "The purpose of § 727(a)(4) is to enforce the [d]ebtors' duty of disclosure and to ensure that the [d]ebtors provide reliable information to those who have an interest in the administration of the estate." *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002) (citations omitted).

T.       In order to prevail under § 727(a)(4)(A), UST must establish five elements: "(1) [Debtor] made a statement under oath; (2) the statement was false; (3) [Debtor] knew the statement was false; (4) [Debtor] made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case." *Id.* (citation omitted).

U.       Applying the above test in the instant case, UST first must show that Debtor made a statement under oath. "A debtor's petition, schedules, statement of financial affairs, statements made at a § 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)." *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005) (citations omitted). Here, Debtor's Schedules and statements at the 341 Meeting were statements under oath.

      V.      Second, UST must establish that such statements were false.  Determining whether a debtor "made a false oath within the meaning of § 727(a)(4)(A) is a question of fact." *Bostrom*, 286 B.R. at 360 (citations omitted).  " 'Filing of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to a debtor's actual financial condition constitutes a false oath under section 727(a)(4)(A).' "  *Id.* (quoting *Britton Motor Serv., Inc. v. Krich (In re Krich)*, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988)).

      i.      Debtor did not list the Belle Claim on Schedule A/B and did not disclose the Belle Claim at the 341 Meeting.  About a month after filing Schedule A/B and three days prior to the 341 Meeting, Ken Nunn Law Office sent the Letter to Liberty Mutual with respect to the Belle Claim on Debtor's behalf.  Debtor had retained Ken Nunn Law Office to pursue the Belle Claim and was aware of his potential claim against Belle at least at the time of the 341 Meeting.  Therefore, at minimum, Debtor's statements at the 341 Meeting were false.

      ii.      Debtor did not list Homeowners on Schedule E/F and testified at the 341 Meeting that all of his creditors are listed on his Schedules.  Section 101(10)(A) defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor".  Section 101(5)(A), in turn, provides a broad definition of a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured".  About a year prior to the Petition Date, Debtor incurred debts to Homeowners for unreturned deposit payments relating to uncompleted work on Homeowners' respective homes.  As opposed to Debtor's statements on Schedule E/F and at the 341 Meeting, Homeowners held claims against Debtor since before the Petition Date and, therefore, were

creditors who Debtor failed to list on his Schedules. Accordingly, Schedule E/F and Debtor's statements at the 341 Meeting related to Homeowners and their claims are false.

W. Third, UST must show that the false statements were knowingly made.

i. As indicated earlier, Debtor testified at the Trial that he did not believe he had a claim against Belle and did not intend to pursue such claim until he received and followed up with Ken Nunn Law Office's advertising material. As evidenced by the Letter sent by Ken Nunn Law Office to Liberty Mutual three days prior to the 341 Meeting, Debtor had already retained Ken Nunn Law Office to pursue the Belle Claim prior to the 341 Meeting. Therefore, Debtor knew his statements made at the 341 Meeting that he listed all assets and had no claim against third parties were false.

ii. Debtor also knew that he falsely stated on Schedule E/F and at the 341 Meeting that he listed all creditors on his Schedules. Debtor received payment demands but failed to return deposit payments to Homeowners. Debtor was arrested for fraud against Homeowners and subsequently released on bond. The Fraud Case was still pending against Debtor when the statements were made. This series of events shows that Debtor knew that Homeowners held claims against him, even if Debtor disputed them. Therefore, Debtor knew that Schedule E/F and his statements at the 341 Meeting related to Homeowners and their claims were false.

X. Fourth, UST must prove that Debtor made the false statements with the intent to deceive.

> To find the requisite degree of fraudulent intent, the court must find that the debtor knowingly intended to defraud or engaged in such reckless behavior as to justify a finding of fraud. Direct evidence of intent to defraud may not be available. Instead, intent may be inferred from circumstantial evidence or by inference based on a course of conduct. Reckless disregard means "not caring whether some representation is true or false ... ." If a debtor's bankruptcy

schedules reflect a "reckless indifference to the truth" then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud.

*Trennepohl v. Neal (In re Neal),* Adversary No. 07-50316, 2009 WL 684793, at *2 (Bankr. S.D. Ind. Mar. 10, 2009) (internal citations omitted). The Court readily finds the requisite fraudulent intent from the totality of the evidence.

      i.    Debtor had retained Ken Nunn Law Office to pursue the Belle Claim when he failed to disclose the Belle Claim at the 341 Meeting. Debtor's testimony at the Trial that he had no intention of suing anyone at the time of the 341 Meeting is not credible as evidenced by the Letter sent to Liberty Mutual by Ken Nunn Law Office three days before the 341 Meeting and the commencement of the Belle Case less than a month after the 341 Meeting. Debtor had a reason to believe he had a claim against Belle when he testified otherwise at the 341 Meeting. Debtor had at least three opportunities at the 341 Meeting where he could but did not disclose the Belle Claim to Trustee.[7] Debtor continued to fail to disclose the Belle Claim after the 341 Meeting. Debtor did not disclose the Belle Case when and after the Belle Case was commenced. Debtor persistently failed to cooperate with UST's requests for documentation with respect to the Belle Case. The evidence admitted at the Trial indicates that Debtor did not want Trustee to know about the Belle Claim and the Belle Case and administer it for the benefit of the estate.

      ii.    Debtor's false statements and continued failure to disclose Homeowners despite his knowledge further support finding of the required intent to deceive. Prior to the Petition Date, Debtor received payment demands from Homeowners, unsuccessfully attempted to return the deposit payments, was arrested for fraud against Homeowners and subsequently

---

[7]   *See supra* ¶ 12.

released on bond, and appeared in the Fraud Case. Despite all such events leading up to the Petition Date, Debtor did not disclose Homeowners but testified that he listed all creditors.

          iii.     The omissions and nondisclosures in Debtor's Schedules and at the 341 Meeting, along with Debtor's unwillingness to be forthcoming with Trustee and UST, when viewed together, show the required intent. Accordingly, the fourth element is satisfied.

Y.     Finally, UST must establish that the false statements related materially to the bankruptcy estate. "[A] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.' " *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011) (quotation omitted). "A false oath may be material even though it does not result in any detriment or prejudice to the creditor." *Clarke,* 332 B.R. at 873 (citation omitted). "A bankruptcy proceeding can't be concluded without knowledge of who the debtor's creditors are, unless omitting to mention them would be immaterial, which it would be only if the amount owed them was utterly trivial." *Skavysh v. Katsman (In re Katsman),* 771 F.3d 1048, 1051 (7th Cir. 2014) (internal citations omitted). There is no doubt that Debtor's statements with respect to his claims against third parties and attestations on whether all creditors are disclosed are related materially to the bankruptcy estate. The potential value of the Belle Claim constituted property of the estate and was important to Trustee and Debtor's creditors. The amount owed to Homeowners, as later determined in the Fraud Case, was far from being utterly trivial to render it immaterial. This element is met.

Z.     The Court finds that UST has sustained her burden to prove each and every element of § 727(a)(4)(A) by a preponderance of the evidence. Accordingly, the Court denies Debtor's discharge pursuant to § 727(a)(4)(A).

*Count 3 - § 727(a)(6)(A)*

AA.    "[T]he violation of a 'lawful order of the Court' *ipso facto* establishes grounds for revocation of a debtor's discharge … , or within the context of 11 U.S.C. § 727(a)(6)(A) constitutes grounds for denial of a debtor's discharge.  Effective administration of bankruptcy cases requires debtors to comply completely with lawful orders of the Court entered in their cases."  *DuBois v. Faber (In re Faber)*, 330 B.R. 235, 240 (Bankr. N.D. Ind. 2005).  Denial of a debtor's discharge under § 727(a)(6)(A) requires the objecting party to show a willful or intentional act of the debtor, beyond a mere failure to comply with a court order.  *Meyer v. Grady (In re Grady)*, 607 B.R. 659, 670 (Bankr. C.D. Ill. 2019) (citation omitted).  The objecting party "can meet its burden of proof by showing that the debtor received the order and failed to comply.  The burden then shifts to the debtor to explain the lack of compliance."  *Id*. (internal citations omitted).

BB.    The 2004 Order is a lawful order of the Court.  Despite Debtor's assertions that he emailed the Documents to UST, UST did not receive any of the Documents.  At the trial, Debtor provided no explanation for his failure to submit the Documents as required by the 2004 Order.

CC.    Under the circumstances, the Court concludes that UST has sustained her burden to prove Debtor's failure to comply with the 2004 Order constitutes Debtor's willful refusal to comply with a Court order.  Accordingly, the Court denies Debtor's discharge pursuant to § 727(a)(6)(A).

## Decision

For the reasons described above, the Court concludes that UST has proven all elements necessary for the denial of Debtor's discharge pursuant to § 727(a)(2)(B), (a)(4)(A) and (a)(6)(A), and Debtor is denied a discharge in the Bankruptcy Case.

The Court will enter judgment in favor of UST and against Debtor consistent with these findings of fact and conclusions of law contemporaneously herewith.

### #